Case number 23-3001, Dean Ray's Sealed Case. Mr. Rowley for the announcement, Ms. Valadieri for the appellation. Mr. Rowley, good morning. Before you give it, and I apologize for breaking the flow of it, but we have your brief and the brief of your opponent on jurisdiction. And unless there are questions from my colleagues, we would like you to go immediately to questions two and three. Judge Katsas, do you have any questions about jurisdiction? I do not. Judge Rowell? I do not. Thank you. All right, then if you would proceed to questions two and three. Thank you, Your Honor. May it please the court, counsel. Your Honor, my name is John Rowley, along with co-counsel John Irving and Stan Brand. We have the privilege to represent the appellant in this case. This case involved questions regarding the application of the Speech or Debate Clause, Article 1, Section 6, Clause 1 of the U.S. Constitution, which, as the court knows, provides that for any speech or debate in either house, members of Congress shall not be questioned in any other place. As the court is aware, this case implicates important separation of powers issues, including whether a member of Congress's informal legislative fact-finding is protected from executive branch intrusion, regardless of whether it is directly tethered to formal authorization from a committee or the House or other arm of Congress. Now, the district court in this case held that fact-finding efforts do not occur within a legitimate legislative sphere if they are not specifically authorized by the House. It concluded, therefore, that unless formally authorized, a member's fact-finding does not qualify for speech or debate protection. The appellant respectfully disagrees with that conclusion and asks this court to reverse the district court's order or, alternatively, to remand this case to the lower court to reconsider its review of the records at issue in accordance with this court's instructions. We have a lot of cases supporting a broad construction of speech or debate clause, but we are construing a constitutional text, and shouldn't we put some weight on the fact that what we're talking about here seems a bit far afield from speech or debate? Well, Your Honor, the Constitution does protect speech or debate, and the case law, both at the Supreme Court and by this court, has made it clear that speech within the legitimate legislative sphere is protected. There's no reason, Your Honor, that the privilege applies to a congressman's office but not to his cell phone, given the fact that in the 21st century, congresspeople, as authorized by House regulations, routinely used their cell phones to communicate on legislative matters. As a matter of fact, during the period of time at issue here, the House specifically encouraged members to use their cell phones to vote by proxy and to communicate with staff and other members regarding legislative matters. And so for that reason, Your Honor, perhaps some time ago it made sense to limit the protections of the privilege to a congressman's workspace in his congressional office. I would submit to the court that that is no longer the case, given the modern realities of technology. Mr. Raleigh, I think it's important here that the aspect of the speech and debate clause privilege that is at issue is the Rayburn nondisclosure privilege. We're not talking about testimonial privilege or any other immunity that follows from the clause. We're only talking about nondisclosure immunity under the clause that was recognized in Rayburn. So I'm wondering what you think might be the limits of such a nondisclosure privilege specifically. So in other contexts where there is a nondisclosure privilege, say in the context of executive privilege, that privilege can be waived if material is shared with third parties. So what about for members of Congress? If a communication is made with somebody outside of Congress, why should that be covered by the nondisclosure privilege? Your Honor, thank you for that question. I believe the principles are similar regardless, or identical regardless of who the member happens to be communicating with, provided that the communication is conducted within the sphere of legitimate legislative activity. Members all the time conduct fact-finding, whether it be informal fact-finding or fact-finding pursuant to a committee resolution. As an example, Your Honor, the unfortunate tragedy in Palestine, Ohio right now, the train derailment and the ecological disaster there. But the thing is, even if we assume that some type of fact-finding, individual fact-finding is covered, for the nondisclosure part of the privilege, why can't that be waived if the fact-finding involves a party outside of Congress? Well, Your Honor, the simple answer to that, I believe, is because this is a constitutional protection, Article 1 of the Constitution, Section 6, Clause 1. And it's a dramatically different kind of constitutional right than some of the others. So the nondisclosure privilege for members of Congress would be broader than that same nondisclosure privilege for the President or members of the executive branch? Because executive privilege is waived when it's shared outside of the executive branch. Well, Your Honor, I don't think it can be waived. But I also believe, Your Honor, that the communication privilege, the nondisclosure privilege, applies to communications that are outgoing and ingoing by a congressman. The lynchpin, of course, is whether or not that discussion, that communication, is being undertaken for legislative purposes. It might be that that discussion is entitled to other types of speech and debate immunity, right? I mean, immunity from criminal prosecution or testimony. But it may not be subject to a nondisclosure immunity. Well, Your Honor, I think the case law in this circuit has made it quite clear that the nondisclosure privilege does apply to circumstances that are quite familiar, quite similar to the ones in this case. And other circuits have agreed. And understanding that law enforcement has a legitimate interest to investigate potential criminality, nevertheless, notwithstanding that, the nondisclosure privilege here, as I say, has been recognized by this court for some 16 years without variation. This is the first time, to my knowledge, that a cell phone has been involved where the government has attempted to seize communications on a cell phone. But by analogy to a congressman's office, I think the matters are nearly identical. It's not the cell phone that makes this odd. It's that the communication can be to anyone in the universe. Usually, you think of a privilege holder as having an entitlement that runs to communications with a defined category of person. You have an attorney-client privilege that's for communications with your lawyer and only with your lawyer. This seems a little different, maybe odd, in that the privilege holder, on your theory, has a privilege that extends to communications with anyone in the world. Your Honor, unlike other types of privilege that are communications-based, like the attorney-client privilege, for example, this constitutional privilege is activities-based. And so once the activity is legislative, I would submit to the court that the cases hold that that activity is protected. It's an absolute privilege. It may be inconvenient at times to law enforcement, but it's an absolute privilege. And the analysis stops right there once the court gets to determine that the communication occurs within the legislative sphere. And, Your Honor, if I could just simply, I want to make sure that I address any questions the court has, but if I can go back to my analogy about Ohio for just one second. If the member in that district conducted informal fact-finding, investigative fact-finding to determine the cause of the crane derailment and the ecological disaster that has occurred in Ohio, as long as that is done within the legislative sphere, it's an issue upon which legislation could be had. If that speech and debate applies, if that member for whatever reason wouldn't receive a subpoena or a search warrant from the government, that privilege would be absolute and would, under the Rayburn analysis, provide with a nondisclosure privilege. So the congressman would have an opportunity to review any communications on that phone for privilege before the government would obtain access to those documents. I'm interested in this. So a number of cases from the Supreme Court and our court have held that if a committee or subcommittee or some component of Congress is investigating, those investigations are covered by speech and debate clause immunity. There are no cases specifically about individual member fact-finding. And it seems to me that if individual member-so actions that come from a committee or subcommittee are really by definition legislative acts. They're in fact acts of Congress or a subcomponent of Congress. And so how do we think about individual member fact-finding? How is it similar to things like speaking on the floor, casting a vote, deliberating and debating about legislation? Again, the judicial focus to determine whether or not the privilege exists and therefore is absolute is on whether or not the communication occurs in an area where legislation could be had. The standard for whether legislation could be had is about whether something is within the investigative power of Congress. It's not the standard for speech and debate clause immunity. Admittedly, the case law pertaining to individual fact-finding by members of Congress is somewhat sparse, but it's not non-existent. For example, in the recent case conceded by the U.S. District Court of Georgia regarding Senator Brown, the district judge there determined that under certain circumstances, citing the Third Circuit's decision in the government of Virgin Islands v. Lee, that immunity can exist provided that the communications are legislative in nature. And the court in that case, as I'm sure your Honor knows, parsed the communications. It's a difficult process, but nevertheless a necessary process required by the Constitution. It's a difficult process to parse the communications that were legislative in nature or purely political in nature. And I think that the same would hold here in this case, Your Honor. Your Honor, I see that I've gone into my rebuttal time. All right, if there are no more questions, then we'll hear from Mr. I do have one more question, actually. Yes, ma'am. I'm also interested, so the Supreme Court has said that in determining whether something is entitled, some type of legislative action is covered by the immunity. We take a categorical approach, right? Things go by whole categories. We don't kind of parse things individually to determine whether they're legislative. And in a number of cases, like in the Brewster case, the court has effectively said that private conversations, you know, in that context involving bribery, were not covered by the privilege. And if they were covered by the privilege, of course, it wouldn't matter that there was bribery involved there. It would be absolutely, you know, the member would have been absolutely immune for those acts. So, I mean, doesn't Brewster suggest that those kinds of private conversations that a member may have with a constituent or a company within their jurisdiction, you know, they might be appropriate. They may even be important to doing their job, but they are not covered by this privilege. Well, Your Honor, again, I hate to keep coming back to legislative purpose, but I think that that's what this case respectfully is all about. If those conversations in the example that you provided were not legislative in nature, then the special court debate clause simply does not apply. Presumably, the bribe is going to be on a subject on which legislation would be had. It wouldn't be a very effective bribe otherwise. Well, Your Honor, I think under those circumstances, it would be hard for me to imagine how a recipient, a congressional recipient of a bribe could plausibly say that he accepted the bribe and that that is protected because he could potentially... Well, that's the whole purpose of the clause, isn't it? Is that a member can on the floor say something, you know, that may be subject to some type of criminal act and then they are immune for that speech or debate. So, if they are not immune from talking to someone back home about a potential bribe, then that whole category of conversations is not covered by the immunity, which means it's not a legislative act. Well, Your Honor, I would submit to the court that even if a congressman was in his office on Capitol Hill discussing with a constituent the possibility of accepting a bribe, that would not be within a legitimate legislative sphere and therefore not protected... Because of criminal activity? Because it does not involve legislation or legislation that might be had. Well, that would then require the court to look behind what the member has been doing, to what their motives were. And the cases are very clear that the judges are not permitted to look at the motives behind any particular action. We take a categorical approach, like either this type of conversation is covered by the privilege or it is not covered. It doesn't matter what the member's motive was. So, if a conversation about a bribe is not covered, why would other private conversations be considered legislative acts? Well, I think this court found in the Rayburn case that Congressman Jefferson was not entitled to the privilege for matters that amounted to criminality and were outside the legislative sphere. And I think the court certainly has the right, has an obligation, to determine whether or not, under a certain factual scenario, it's plausible that legislation could be had and that the reason for the communication was within the legislative sphere. In Your Honor's example, respectfully, I just don't think that that would be plausible and I think the court would smoke that out right away. Thank you, Your Honor. Thank you. All right. Thank you, Mr. Braly. We'll give you a couple minutes in reply. Mr. Pelletieri. Thank you, Your Honor. If I may please the court, John Pelletieri on behalf of the United States. There are several grounds for either dismissal of the appeal here or affirming the district court's order. I'd like to just start with a brief overview of what we think the logical progression of the issues are here. First is jurisdiction. I know Your Honor has not asked for an argument on that, but we believe the case should be dismissed for lack of appellate jurisdiction. Second, if the court determines that it possesses appellate jurisdiction, the next question is, does Rayburn and the nondisclosure privilege that the court recognized in Rayburn apply to a personal cell phone? If the court determines that it has jurisdiction and that Rayburn applies to a personal cell phone, the next question is, well, does this court independently need to conduct the Rayburn privilege review independently from the review by the district court? If the court determines that it has appellate jurisdiction, it applies to a personal cell phone, this court has to do a review. The next question is, well, what is the scope of that review? Does it only apply to materials that are kept in confidence, which would be a much smaller portion of the materials at issue here? Only if the court concludes that it has appellate jurisdiction, that Rayburn applies to a personal cell phone, that this court has to conduct its own review, and that we think if it gets there, it should only apply to materials that are not kept in confidence, then the court gets to, well, what is the scope of the category of legislative acts that are protected by this future debate clause? And part of that issue is the issue of what people have called informal fact-finding. Can we talk about the extent to which these materials have to be maintained confidentially? So, I mean, we can just go through some hypotheticals, right? So if a member has a communication with somebody outside of Congress, I take it the government's position is that then the confidentiality has been breached. Yes, so the particular nondisclosure privilege that this court recognized in Rayburn and it derived it from the civil conflict in Brown v. Williamson is grounded in the idea that members of Congress need a certain amount of confidentiality and privacy for their internal communications and conversations, and that requires a nondisclosure privilege so that their communications are not chilled. I think in Brown v. Williamson, the court said that it was prepared to respect the confidentiality of congressional files, and it specifically distinguished a third-circuit case because in that case the materials had gone to third parties. Congressional files recording communications that took place wholly outside the Congress. Brown v. Williamson and MnPICO before it. Well, I think what Brown v. Williamson meant is not that the emails themselves, or excuse me, the materials themselves could not be in any way disclosed. It was Congress's specific working files, and that reflected its deliberations. So it wasn't necessarily on par with, say, a communications file. It didn't reflect deliberations. They were trying to get the Brown v. Williamson documents that were stolen by the paralegal from the outside file. I think the discussion in Brown v. Williamson said that it reflects the internal functioning of Congress, the way a, for example, unraveled preparation for a committee hearing. Because it was an investigatory file. It was part of the investigatory file that reflected, it's kind of like I would think of a work product, the way an attorney's work product file. So suppose a member is deliberating on how to vote, and as part of the internal, not chambers, office process, they do a series of calls to key stakeholders and constituents and supporters outside the government, and they record the communications. John Smith says vote yes because of some reason, and Jane Doe says vote no because of some reason, and that information is in a file. Do you think you can get that? If it, I would assume that the recording itself, I don't think we, I think we could get that. Yes, I think there's no, let me be clear here. I think the nondisclosure privilege does not, and I just want to be clear, that doesn't mean we could use it as evidence in a criminal proceeding or a civil proceeding. It doesn't mean that the member can't claim testimony privilege about it. It doesn't mean that a member can't claim immunity about it. It's just simply the nondisclosure privilege, that narrow privilege that the court has recognized in Brown v. Williamson and in Rayburn, and I would point, for example, to the Helsopovsky decision in the Supreme Court. In that case, the member appeared, I think, ten times before a grand jury and talked about all sorts of legislative acts, talked about introducing, he talked about introducing bills and things of that sort, all legislative acts, and so he clearly did not stand on his right, testimonial privilege right. Then later, when he was indicted and it went to trial, and the government sought to use that evidence against him, it was excluded, and the Supreme Court upheld that. So here, because it functions differently in different circumstances... But still, the speech or debate inquiry turns on what counts or doesn't count as a legislative act. I think I would say that there's two inquiries. One is, what is a legislative act? And then the second is, what is the specific protection afforded to the member of Congress for that act? And there's different components. I mean, you're just fighting, you're just trying to re-litigate Rayburn and Brown v. Williamson if you're saying there shouldn't be a testimonial privilege as opposed to a substantive immunity. I think it's the scope of what the nondisclosure protection entails. It protects confidentiality. And that protection is not at all at play when these materials are perfectly open to the public. And they're not open to the public. He doesn't hold his cell phone... A member doesn't hold a cell phone open to the public. Well, the communications are with members of the public who could be subpoenaed, who warrant to be issued to their email. And so it's not in any way something that can only be obtained from a member. And it's similar to any other kind of confidentiality privilege. An attorney-client privilege is not kept in confidence, is not protected when it's made open to any member of the public in that manner. That's a good analogy for you. But what about, I was thinking, Exemption 7 of FOIA. The government is, the executive branch is investigating. And in the course of doing that, they speak to people in the world and they assemble a file recording what they have found out and what they're looking at and how they're deliberating. That's protected even though the communication is not with the defined person like your lawyer or your priest or your chief of staff. So why couldn't we think of this in that way? Building on the idea your friend put on the floor, which is that the privilege here runs with the acts, not with the person to whom the member is communicating. I don't quarrel with the idea that the speech or debate privilege turns on the scope of legislative acts, but I would quarrel with the idea that every protection afforded by the speech or debate is connected to every single legislative act. And I think Helstovsky demonstrates that. And I would say that the scrimmage is unclear and that when we're talking in the context of the speech or debate clause, obviously the text itself talks about speech or debate in either house. It's been made clear that it's gone beyond the text, but it is only done so when necessary to effectuate the purposes of the clause and when the conduct is integral to legislative activity, the processes. So I would say that insofar as this notion of a nondisclosure privilege doesn't serve the very purposes of applying it to public acts, doesn't serve the purposes it's intended to serve, it should not be extended any further. So let's separate out those two pieces, whether there's a legislative act and whether nondisclosure privilege applies. So just talk about the first issue. A member, there's a bill on the floor. A member who is not on the relevant subcommittee is trying to educate himself or herself, makes calls to experts outside the government and says, what do you think? What's your recommendation on how I should vote? Is that a legislative act? No, Your Honor. If it's not connected to a member trying to decide how to vote on a pending bill, seeking information to inform his vote, it is not a legislative act unless it is connected to the investigative fact-finding functions of Congress as a whole, its responsibility and authority to gather facts. Watkins and other cases make clear that Congress, each chamber of Congress, has the authority to collect facts and collect information to determine how to legislate. And it could exercise that function as a House, but what it does as a practical matter is it delegates it to committees, and those committees have subpoena power, they hold hearings, and that is how Congress exercises that function. And when it's done outside that function, it is not an integral to those... Integral part of the deliberative and communicative process by which members participate in hearings and vote. That's the rule of statement from Gravel in cases like that. It says, integral part of the deliberative and communicative process by which members participate in committee and House proceedings... And vote. With respect to consideration, well, it has to be integral to the participation in House proceedings. Yes, to vote. Okay, so the member, so the bill is on the floor, and the member is trying to figure out how to vote. Not everything... You don't think it's integral, that member, it's not integral to that member's vote? Not everything... Educate himself or herself? Not everything that occurs in a congressman's life that you can connect in a logical inferential chain of inferences to a vote is protected by the speech or debate clause. No, it's a question of degree. How important, how closely related? And this one needs to, and in all cases, determining legislative act category, needs to draw lines. And the line, the Supreme Court has made clear that when drawing lines outside of the text of speech or debate, that the courts need to balance, need to do a balancing between a rule that protects the legitimate prerogatives of Congress versus rules that effectively cloak members of Congress with very broad, almost blanket immunity. And giving every member of Congress the idea that any kind of communication that could conceivably inform a vote on the House, in the House or the Senate, I mean anything can come over the Senate. We know with budget resolutions, every facet of American life comes before Congress. Suppose there's a pending bill on the floor. There's a pending bill on voter ID and a member who's not on the subcommittee, doesn't have subpoena power, is thinking, well gosh, this turns on whether voter fraud is a big problem or not and it turns on whether this bill will have a big disparate impact on an identifiable group. I want to educate myself about those issues. And that member calls a civil rights group, a voter integrity group and says, what do you think? Is there a problem here? It's obviously entirely proper. Right. But it would seem like it's pretty tightly bound up. But it's not connected to the fact-finding function of Congress and therefore it is not sufficiently a legislative proceeding A member dealing with a pending vote on the floor who's not on the committee, has no fact-finding function related to his vote? Well, they have the ability and it's certainly within their office as a member of Congress to do that. But it does not fall within the legislative act. I would draw the comparison that Your Honor has discussed earlier with Brewster and Halastosky. That drew the distinction between the actual vote on the floor of the House and discussions that preceded it. In that case, it was discussions about an offer to accept an offer for a bribe. But it did not turn on the criminality. It couldn't turn on the criminality there. It had to do with the fact that it preceded the core voting of a member of Congress. You have to have some account of why a committee's investigation and fact-finding is a legislative act but a member's similar activity is not. I don't think it can just start on authorization or formality. Because there's this idea that this committee fact-finding is covered. Why would an individual member's fact-finding not be covered? I think you need to have some account of that. At least it's, to my mind, not about authorization or formality. And I think a lot of people have formulated it as formal and informal. I'm not sure we embrace that. I know we did that as well in our order. But I'm not sure if that's the best label. I think what you have to do is connect what a member does to the procedures and proceedings in Congress. And obviously voting is a proceeding. Introducing legislation. Introducing legislation. But I think what Brewster and Olszewski established is that discussions with members of the public preceding a vote is not legislative activity. And why is that? Because it's too attenuate. I think what the Supreme Court says is that conduct incidentally related to legislative affairs but not part of the legislative process itself. And if you look at all the cases that the Supreme Court has ruled on, it's introducing proposed legislation, placing material on a congressional record, authorizing a committee investigation, questioning witnesses at a committee hearing, subpoenaing at a committee hearing, publishing committee reports, delivering a speech on the House or the floor, voting on resolutions, a member's missives to members of the public bear no family resemblance to those at all. They don't. And what they are, they resemble what the court specifically concluded was not covered in Brewster and Olszewski, which are discussions that precede legislation about that legislation. If a member of Congress talks about a piece of legislation with an interest group and says, yeah, I agree with you, that's not covered under Olszewski and Brewster because it is not integrally related to legislative procedures. There has to be a linkage. When you're going beyond the text, there has to be a linkage. And that balances the idea of protecting prerogatives but not cloaking members with boundless protection. It's tricky. It is tricky. And I think that McSorley struck a good balance. He struck a good balance. And it's an adminishable rule. It's an adminishable rule, which is a virtue in the context of privileges to have a clear and adminishable rule. We think McSorley does that. We think McSorley balances the prerogatives of Congress with the dangers of cloaking members with broad protections. I have another question about the nondisclosure aspect of this. I think that for nondisclosure privileges, there likely has to be some type of two-step process. It has to be a legislative act, and it has to not be waived because all nondisclosure privileges operate with some type of waiver concept. So if we assume that that is the framework, and even if we assume that a whole range of communications are legislative acts, I think the question of waiver is how does it apply between members of Congress? So to what extent is something confidential if member A shares something with member B or staff of member A or B? How far does the confidentiality extend? Maybe the confidentiality doesn't extend if it goes to a third party outside of Congress, but to what extent does the confidentiality attach if the communications are between members? There are no real cases, as far as I can tell, that speak to how the privilege might operate between members, and I think that's in part because Brown and Williamson and Rayburn are the only two cases talking about this nondisclosure privilege, and it hasn't been fleshed out. It's not been recognized in other circuits. So I think that is a hard question. I'm wondering what the government thinks about that. I think that, at a minimum, the most expansive conception of this nondisclosure privilege would only encompass communications that involve members and their staff and no member of the public or the executive branch. There might be situations where it's narrower. I think that might have to be addressed in a future case that arises. What about between members? I think that between members, the nondisclosure privilege would apply under the logic of Rayburn. So there would be no waiver? It would be within Congress if it was between members. That's my understanding of the best reading of Rayburn is that the nondisclosure privilege is intended to avoid a chill on deliberations. It doesn't use the word deliberations. It uses the word interactions, I think, between members of Congress. If between members there's no waiver, that still is a question of whether communications between members or staff are legislative acts. Yes. Is the government's view that all such communications would be legislative acts, or some member communications would not be legislative acts? Absolutely not. I think that the nondisclosure privilege can only apply to those communications kept in confidence, but then it only applies to those communications that qualify as legislative acts. Not everything between two members or staff would be legislative acts. Orders for lunch wouldn't be covered. But one member deciding how to vote on a bill pending on the floor reaches out to a colleague, a colleague who was on the committee and knows the facts better. And the first member says to the second, what's the situation on the ground? What are the facts? And that member answers the question. Is that covered? I think that would be covered. It's a little bit of an odd line. The member who is looking to educate himself on the facts and reaches out to a colleague for help, that's covered. But an identically situated member facing the same vote on the same pending bill reaches out to an expert in the world for advice, and that's not covered. Yes, I mean, I think that that is the line the Supreme Court has drawn. In Gravel, they talked about preparations for a committee hearing between a member and a staff, and I think that they would probably put preparations with other members of Congress on the same footing. And there's enough of a link to an actual legislative proceeding there. Because I think in your hypothetical, you're talking about a member who's actually on the committee that has the authority to conduct the investigation. So all those factors link it to a... put it within what the Supreme Court has determined would be close enough of a link to qualify. Let me give you one more. You're the chairman of the subcommittee that's authorized to investigate, including through coercive subpoenas and such. And you are deciding whether or not to hold hearings, and as part of that inquiry, the subcommittee chairman reaches out informally to the interest group and says, is this issue a problem? They have a conversation, and then the possible hearing dies on the vine. There's never a formal authorization. There are never subpoenas. Is that conversation a legislative act? I think it necessarily would be. A legislative act. Because what the court said necessarily is that you can't know whether to issue a subpoena. So the line can't be formally authorized or not. It's not hypothetical. We never embraced formally authorized. What we think is that it has to be connected to the Congress's exercise of its investigative fact-finding authority. I'm sorry. I thought that was your whole theory of McSorley and the Tenth Circuit case, Bastion. I just don't think we've used the formulation of formal. I think what it means is there has to be a connection with Congress's exercise of its fact-finding authority, which means if you look at what happened... McSorley is about information gathering. It's in the subcommittee, and we have the phrase requirement of congressional authorization, and the district court here took that to be the governing rule, and I think you embraced that. Well, I think what McSorley says, and what we don't dispute, is that informal fact-gathering in connection with a committee hearing, which is what McSorley specifically said, is covered. So the formal-informal is not the demarcation. It's connection with the congressional... Is the demarcation whether it's an institutional act of Congress? Like Congress as an institution as opposed to members acting individually? I mean, how conceptually should we understand this line? It's when the fact-finding is connected to Congress's exercise of an investigatory authority. So there's a proceeding, there's a legislative proceeding that is aimed at fact-gathering. And that's why... But why is an individual member's fact-finding not a legislative proceeding? So a member is thinking, I'm trying to decide whether to introduce the bill, which is a power that every member of Congress has, as an individual, to introduce a piece of legislation. Why is fact-finding, that is a precursor to that type of activity, not included? Well, it's on the same footing as what happened in Brewster and Helstovsky. And it's because it's not everything that a member of Congress does, and that's perfectly legitimate, acceptable, even expected, is covered as a specific... Wait, wait, wait. What is the difference between the member and the committee? So if a committee is thinking about, as like a group, is thinking about whether to introduce legislation, that committee's activity, I take it, you're saying is covered, right? So there has to be some reason to separate the institutional parts of Congress from the member. Because what the Supreme Court precedent establishes is that there needs to be a sufficient linkage with a process in Congress. And each house of Congress has the authority, the implicit authority, to investigate, to develop facts, to determine facts, in aid of its other constitutional responsibilities. Each house can determine how it wants to do it, however it wants. It doesn't have to do it through a committee. It can get every single member of the House to subpoena power. But it could do that. And if that were the case... I mean, it's not just the subpoena power that's protected for committees, it's any sort of fact-finding. Right, right. And so, like, at the granular level, you know, there could be committee proceedings, but, like, each member thinking about whether to introduce legislation is a kind of mini-proceeding, maybe. Well, I think... I mean, why isn't it in the government's view? Like, where does the... where's the line? Well, if that were the case, then any kind of conversation with anyone about any vote whatsoever would be covered. It just isn't, because that would relate to a vote. And that's just not the line. It would be too expansive. There has to be a demarcation that balances the values of the Speech-to-Debate Clause. And the demarcation that would permit anything, where there could be an inferential line of logical inferences that connect something to a vote, would just be too expansive. It would close members. It would make them super-citizens, is what the Supreme Court said. And I think that what we're talking about is very... So, a member is on a subcommittee that has formally authorized an investigation, and that member does the informal calls to groups. It's not a subpoena to haul them in. It just starts... Call it developing the record. If you want to be charitable, call it snooping around. If you want to be uncharitable, the member is on the phone finding out whatever he or she can find out. Is that covered? I mean, certainly that would be covered. That would be an informal fact-gathering that's aimed at... that's integral to the exercise of Congress's fact-finding authority. You're putting... You're putting a lot of weight on this formal authorization by the subcommittee, which makes sense as a requirement for the issuance of coercive process for hauling in someone pursuant to a subpoena. There are lots of reasons why you don't want any one member able to do that. Well, I think it's really appropriately made a principled line where it said, obviously committees, they gather facts through hearings, subpoenas, sometimes depositions. But in order to do that, there has to be some level of ability to figure out who to subpoena, who to call in, what witness to call in for a hearing. And so if there's a connection with that type of activity and this, what you want to call it, activity, that is sufficient to make it an act that's integral to the procedures of Congress. But if some member of Congress just makes a mission to someone randomly... I mean, for example, the Senate has the power of advice and consent for nominees, and there are committees that have hold hearings and they gather information and they question the nominees and they go out into the world and collect information. But if some other member of the Senate just thinks that they might want to find something out and goes and interviews someone out in the world, that is not sufficiently integral to the procedures of Congress, to the processes of Congress to qualify under the test that the Supreme Court... A member deciding whether or not to vote to confirm with the Supreme Court justice can't call people who know the nominees. They can call. That's not integral to the vote. It's not... It's a responsible exercise of that legislative function. It is responsible and it's an appropriate exercise of the official... a member's official capacity. But it is not... It's not... It's not integral to the vote. It's not integral to legislative... It has to be in the position. Because if that were the case, then everything, almost everything would be covered, Your Honor. It would be... It goes too far. At a minimum, there has to be some standard that excludes everything that could possibly be characterized as gathering information. There has to be something. I mean, the Third Circuit has a formulation that we don't embrace, but at a minimum, it requires fact-finding in the district court to say, is this a bona fide... Is this conduct... Is the predominant purpose of this conduct fact-gathering? Is that the bona fide reason for that conduct? And then the district court has to make fact-finding about that. I think we could put even more teeth into it if the court were inclined to go in that direction, but we think it's certainly better. But we would say that there has to be a specific link between a bona fide... The activity has to be predominantly for fact-finding. It has to be the bona fide reason for the fact-finding. And there has to be a very direct link with something that's actually in Congress, that is pending in Congress, whether it's some actual bill that's there. Is the government... I mean, is the government's position that there has to be a proceeding in Congress and that the member's action has to be a part of that proceeding, not merely related to that proceeding? The... There has to be... The acts of the member of Congress has to be integral to his participation in a proceeding of Congress. And when that comes to fact-finding, there's a method that Congress engages in fact-finding. And so the linkage... But we did have to be sort of part of the proceeding of fact-finding, because, I mean, in your line, you're saying a senator calling an outside group about a judicial nominee is not covered, but asking questions at a hearing to the nominee or to outside groups that come in to speak about the nominee would be covered. Is that... I mean, is that... Is that the line that you're drawing? If the senator were on the committee and were engaging in those calls to figure out who to put as a witness, maybe a subpoena or things of that sort, that would be covered under mixed reality. But some... What if a member of the committee, the Judiciary Committee, calls someone on the ABA just to talk to them about a candidate? Or to someone in any group. I think that under mixed reality, that would probably be covered. And that might be a harder question because there might not be a link with the actual exercise of fact-finding and it might be more of the individual member's informational purposes. But if the purpose of the head of the committee, the Judiciary Committee, contacting someone in the ABA was to decide how are we going to go about this hearing to gather facts about this nominee, under mixed reality, I think that would be covered. But if it's just some other member of Congress who just wants to know something and he goes out and interviews people, that does not have sufficient... Well, they want to know something because a nomination is pending before the Senate. A nomination that they're going to have to vote on. Why is that not a proceeding? It's appropriate. And it's appropriate to get information. But it's just not enough to come within the legislative act. So, for example, there's a lot of things that members do that are very important to their legislative conduct. They try to gather support for their bills by putting out news releases and by making speeches off the House, outside of Congress. A speech outside of Congress is not covered. No matter how important it is to get to a vote in Congress. And it should not matter that... It should not transform into protective conduct if at the end of the speech the member of Congress asks for information from the public. If they have a speech and then say, did anyone have any input that I can have? That would be protected under this broad theory that the account proposes here. I mean, maybe yes, maybe no. Right? I mean, could be that that sentence isn't covered. Could be that we apply a predominant purpose test and say that speech isn't covered. Your position is that no informal outreach is covered. No matter how pure, no matter how exclusively the purpose is fact-gathering, no matter how soon the pending bill is to be voted on? If it's outside the fact-gathering authority of either House. Now, if it's within the fact-gathering authority of the House and it's this type of informal activity, then certainly it's covered. But we think that the line that McSorley draws is appropriate. The balancing there. It balances between a huge cloak of privilege versus what's necessary and sufficient to extend the protections beyond this language. And in this context, we think that the balance that McSorley strikes is appropriate. And if this Court is inclined to move from McSorley, at a minimum, there has to be something with sufficient teeth to exclude the broad range of activity that the appellant's formulation would encompass. Their formulation is anything that's in connection with or in aid of an activity that qualifies as legislative in nature, that's everything. If that Indian congressman does wake up in the morning, that's covered. And the Supreme Court, if you look at the family, if you look at all the stuff that the Supreme Court has said is protected and isn't protected. And informal fact-finding of the sort that's outside the committee investigation is much more similar to what's not protected. It's much more similar to newsletters, to speeches outside of Congress. And it's much less similar to questioning someone in a committee, to offering a bill, to voting, to speech. I mean, if you look at what the Supreme Court has concluded is protected, it bears no resemblance to the kind of making a phone call or sending an email to someone in the public. It just is not in any way similar. And it should not be extended to that. It would be a huge expansion of what the speech and debate clause covers. It would be a huge step toward making members super citizens. And it's not the step that this court should take. In other contexts involving preparation, interrogation, investigation, you know, picking Gravel and Brewster from the Supreme Court, McSorley from our court, one clear carve-out of things that aren't covered is that investigations are covered, but when the investigating act itself violates the separate criminal statute, that's not covered. So the member who has a conversation about a bribe, that's a separate act which you can investigate and prosecute, or in the context of coercive power to investigate, you can execute a search warrant, but it has to be constitutional. Why can't we solve your legitimate law enforcement interest by just saying we are only talking about the communication, the informal communication by which the member acquires information, and that in no way immunizes the bribe or any other crime that could be committed through a verbal act? Well, I think at this court we're saying that anything that could possibly be criminal evidence in a criminal case wouldn't be covered under the nondisclosure clause, and we've been prepared to embrace that. If you're saying that fact-gathering that is, at a minimum, if there's probable cause to believe it could be provided evidence of criminality, at the minimum, at the nondisclosure stage, that would be perfectly appropriate. I think it's a hard question that once you obtain that and then you go beyond nondisclosure to use, I think there could be some line-drawing questions with that type of standard. I think that if what Your Honor is saying is that informal fact-gathering that is linked with criminality is not covered, I'm not sure that that is, that might be a workable standard, but I don't know that that's, I'm not sure that's even where McSorley goes, but it at least would strike a better balance in this idea that any kind of, anything that provides some sort of information to a member. I mean, I thought that it sort of was where McSorley went, because we said, on the one hand, the kind of investigation, the kind of activity at issue, which was gathering information by subpoena, was legislative, and then we said it might not be protected, because there was adequately pled that the subpoena was executed through unlawful means. So that's the kind of line I was trying to get at with my question. Well, I think if the collection is through unlawful means, it might be different than the fact-gathering could be evidence of a criminality, right? I think in McSorley, the evidence was collected through arguably, there was a disagreement about whether it was a Fourth Amendment violation. So it was the act of collection that maybe excluded that, but if your honors are inclined to say, well, any informal fact-gathering that is linked to criminality, that would be a better standard that better balances the idea that informal fact-gathering should not be a cloak for immunity. Wouldn't that run against the Supreme Court's view that we have to take these categories as categories, and wouldn't it require a court to look behind the, at the motives of the fact-finding? So a rule that says informal fact-finding is protected, but not for criminal activities, seems to both run against the idea of having a categorical rule  we can't look at the motives of real legislative acts. There could be some tension there. I think that, for example, with Brewster and Hostoski, when they're talking about all their conversations that precede legislative acts, voting, I don't think it turns on the fact that there was an illegal bribe there. It was the fact that these types of conversations that offer these pre-vote conversations that are not covered, which is why we think that this type of fact-gathering should not be covered necessarily on all fours with that type of conduct. But there is some authority in the Supreme Court about effectively authorizing conduct and then executing that conduct. I think it's, for example, I think in the Kilbourn case, you had a Congress-authorized investigation, and then a someone who was working for the committee went out and, I think, arrested someone to, I think, don't quote me on the facts, but I think that that's what that person did in connection with the hearing, and the Supreme Court held that the voting on the authorization was protected, but not the gathering or arresting. You could make that same line between informal fact-finding that's a criminal activity. I'm not sure. That distinction doesn't apply. I mean, I think as applied here, really, it means that the activities connected to the committee proceedings are protected, but going out and missing someone else is not really, I think, regardless of criminality. I think that's the best line. I think that that is really faithful to Supreme Court precedent, and it strikes the appropriate balance. Can I just ask one question? I mean, if you have any evidence of the original meaning of the speech and debate clause, and whether that covered this type of individual member fact-finding? I mean, this is not, like, a question arguably squarely addressed by the Supreme Court. We're not aware of anything that would cover anything along these lines. I mean, it kind of... From what we know, it was, you know, there was obviously no e-mails. The ease of getting all that type of information was not available. It was really much linked to physical presence and that type of activity that occurred within Congress. What's wrong with the way the district court in the Graham case drew the line? You know, Judge Rao has a great point about categories, and you can't probe motive. The district court in Graham said you can look at the communications on their face and make a judgment whether they reflect gathering of information to inform things that the senator would do as a senator, and that would be covered, or other communications might reflect cajoling action by someone outside of Congress, and that would not be covered. I think when you link that with Rayburn, you've got a totally unworkable situation for district courts and this court. You're going to have huge amounts of documents where every single one needs to be looked through individually, and it's an ex parte proceeding, and insofar as the appellant, the member, doesn't come forward with that type of stuff, it wouldn't meet the burden. It would be entirely unworkable, and I also think it's just inconsistent with Supreme Court case law for all the reasons we've discussed here today. It's unworkable. It doesn't drop the line. It doesn't make that appropriate line. Why is it any more problematic than any other privilege which has whatever elements it has, and the district court has to make judgments about whether the privilege applies to the disputed communication? Well, it... I used to litigate tobacco cases, and there were privilege logs running thousands of pages on whether particular communications were attorney-client or not, and someone would have to decide that. But in our experience, you don't have a procedure where a district judge goes through thousands of documents and that determination is then appealed. There might be a few documents. There might be some portion of documents. I mean, okay, so you're snuggling in the jurisdictional argument, which is fine, but I understand. Anything else? What's that? Judge Henderson said that we might have a logistical issue. Judge Henderson, are you there? Okay, I'm told we might have a logistical issue with her, so you want to just wrap up? Yes, so... We're done. We're done with our questions, so I'll give you 30 seconds. As I started with, we need to discuss a lot about the non-disclosure privilege and the fact-gathering that might be protected, but I would want to just, again, frame this for how the court should consider it as a logical matter. Obviously, jurisdiction has to be covered first, and then whether it really extends beyond the congressman's office, whether this court needs to review the thousands of documents, and then whether the non-disclosure privilege narrows that, and then only then, if the court has to cover or review all the 2,000 documents and it's narrowed to a much smaller amount, then the court gets into this notion of the scope of the legislative act and the extent to which fact-gathering is. And for all these reasons, we think that at various points, affirmance or dismissal is appropriate. We appreciate your argument. Thank you very much. Thank you. Ron, a few quick points. Ron, the government's position and the district court's position regarding the formality required simply does not work because the minority in Congress doesn't have special authorization to conduct any fact-finding, right? So if the government's position were to be adopted by the court, that would mean that only the majority could conduct fact-finding. And so on its face, Ron, I think that that position not only flies in the face of case law but also is a practical impossibility to say that half of the Congress has no speech or debate privilege because any fact-finding that it might do is not authorized by a committee or by the House. The other point I wanted to make, Your Honor, was the issue of legislative act is not hypothetical in our case. Counsel talked about hypothetical legislative acts and whether or not fact-finding was connected to those acts. What we have in the facts of this case are two pending matters that the appellant was investigating in his fact-finding. One was his vote that was coming up on January 6th regarding the Electoral Count Act, and the other was the For the People Act, H.R. 1, that had been passed by the majority in the House on January 3rd, 2021, just three days earlier. So this fact-finding was not hypothetical. It was done for legislative reasons within a legislative sphere, and for that reason, Your Honor, is subject to speech and debate privilege. Thank you, Counsel. We have tried to make as much of this argument public as we can. Obviously, these interests have some public interest. We have pending before the Court a motion to unseal other parts of this proceeding. We will act on that in due course. For now, we would like to speak with the parties about some issues that we can't discuss in open court, so we will take a brief recess while the CSOs clear the courtroom, and then we'll be back with the parties in closed session. Thank you.
judges: Henderson, Katsas, Rao